UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDWARD BROADBENT,

 Plaintiff,

   v.              No. 3:18-cv-02127(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

 Defendant.

————————————————X

## **RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Edward Broadbent's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative,

---

[1]  The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2]  Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

an order remanding his case for a rehearing. [Doc. # 15]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 16]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court denies Plaintiff's motion to reverse/remand and grants the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe

2

impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be

sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## BACKGROUND

**a. Facts**

Plaintiff filed his DIB application on April 17, 2015, alleging a disability onset date of November 5, 2009. Since he last met the insured status requirement of the Social Security Act on December 31, 2014, Plaintiff must show he was disabled on or before that date. *See* 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.130. Plaintiff's claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On September 30, 2014, a hearing was held before Administrative Law Judge Deirdre R. Horton ("the ALJ"). Plaintiff, who was represented by counsel, testified at the hearing. On October 21, 2014, the ALJ issued a decision denying Plaintiff's claim. Plaintiff requested review of this decision by the Appeals Council, and on May 25, 2016, the Appeals Council issued a remand order. This order remanded the case to the ALJ to for additional proceedings, including to obtain evidence from a vocational expert ("VE") to clarify the effect of Plaintiff's limitations on his occupational base. (R. 146).

The ALJ held a second hearing on August 9, 2017. At this hearing, Plaintiff, who was represented by counsel, and a VE provided testimony. On September 13, 2017, the ALJ issued a second decision (the "ALJ's decision") denying Plaintiff's claim. Plaintiff requested review of the ALJ's decision with the Appeals Council. On November 1, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was forty-two years old on the alleged disability onset date. (R. 39). He has an eighth-grade education and difficulty reading and spelling. (R. 24). Plaintiff has past work experience as a municipal park maintenance worker, a transfer station attendant/waste disposal attendant, and a garbage collector. (*Id.*). He has not worked since 2007. (R. 41). Plaintiff's complete medical history is set forth in the Fact Statements filed by the parties. [Doc. ## 15-2, 16-2]. The Court adopts these Statements and incorporates them by reference herein.

b. **The ALJ's Decision**

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity from the alleged onset date through his date last insured. (R. 17). At Step Two, the ALJ found Plaintiff had the following severe impairments: cervical degenerative disc disease with herniation of the cervical and thoracic discs with some degree of stenosis, status post fusion; obesity; and depressive disorder. (*Id.*). The ALJ concluded that Plaintiff's irritable bowel syndrome, hypertension, emphysema, and migraines were not severe. (R. 18). At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. (R. 18-21). Next, the ALJ determined Plaintiff retained the following residual functional capacity[3]:

> Plaintiff had the RFC to perform light work with no climbing of ladders, ropes or scaffolds. He is limited to simple, routine tasks; can relate appropriately to others, but should engage in tasks alone rather than in groups or teams and should have only occasional superficial interaction with the general public. No overhead reading with the left arm; no unprotected heights and hazardous machinery. The claimant has a very limited ability to read and write.

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

(R. 21-23). At Step Four, the ALJ found Plaintiff was unable to perform his past relevant work. (R. 23). Finally, at Step Five, the ALJ relied on the testimony of the VE to conclude that there were jobs existing in significant numbers in the national economy Plaintiff can perform. (R. 24). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC could perform the positions of retail marker, plastic hospital products assembler, and linen grader. (R. 25). Accordingly, the ALJ determined Plaintiff was not disabled.

## DISCUSSION

Plaintiff raises two arguments in support of his motion, which the Court will address in turn.

### 1. The ALJ's RFC Determination

Plaintiff first argues that the ALJ's RFC determination was faulty because it did not limit him to sedentary work with additional limitations on hand usage and accommodations for time off-task. The Commissioner responds that the RFC is supported by substantial evidence. The Court agrees with the Commissioner.

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ determines the RFC based on all of the relevant evidence in the record, including medical evidence, opinion evidence, and a claimant's subjective complaints of pain. *Id.* A claimant's RFC "'is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)). Before an ALJ assesses an RFC based on exertion level (*i.e.* whether the claimant is capable of sedentary, light, medium, heavy, or very heavy work), the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related

6

abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945." *Id.* (internal quotations marks omitted). The functions described in these paragraphs "include physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions." *Id.* Also included are mental abilities "such as understanding, remembering, carrying out instructions, and responding appropriately to supervision." *Id.* Finally, functions also include "other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors." *Id.* While the ALJ is required to base the RFC on all relevant medical evidence, the ALJ "need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision.'" *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). When an RFC determination is supported by substantial evidence it must be affirmed. *Barry v. Colvin*, 606 F. App'x 621, 623 n. 1 (2d Cir. 2015).

Plaintiff maintains he should be limited to sedentary, as opposed to light, work, and that it is unclear how the ALJ determined the RFC for light exertion level. The Court finds the limitation to light work is supported by the record.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567. Here, the record supports the ALJ's finding that Plaintiff is capable of light work.

Plaintiff's post-surgical outcomes are consistent with an ability to perform at the light exertion level. Orthopedic notes from an August 2006 follow-up visit, after his February 2006 knee surgery, show Plaintiff had full strength in the lower extremities; he was cleared to return to all activities without restriction. (R. 389). In addition, an x-ray taken at that visit revealed no significant degenerative changes, bony abnormalities, or subluxations. (*Id.*). Likewise, ten weeks after his 2009 anterior cervical surgery, Plaintiff had full motor, tone, power, and strength throughout. (R. 424). X-rays from that visit revealed good healing and excellent alignment. (*Id.*). Plaintiff was cleared for full-duty work. (*Id.*).

In addition, the consultative examination performed by Dr. Guarnaccia[4] on September 24, 2012 is consistent with a finding Plaintiff can perform light work. Dr. Guarnaccia observed Plaintiff had full shoulder muscle strength bilaterally, full flexion in the knees bilaterally with difficulty sustaining full extension on the right, 4/5 muscle

---

[4] Plaintiff additionally argues that the ALJ erred by failing to mention Dr. Guarnaccia's evaluation report or to assign it any weight. The Court disagrees. First, the ALJ discusses in detail Dr. Guarnaccia's consultative examination findings. (R. 22-23). It is clear that the ALJ considered the report in formulating Plaintiff's RFC. In addition, the Court is not persuaded that Dr. Guarnaccia's report is a medical opinion that required weighing by the ALJ. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). In this case, Dr. Guarnaccia's report contains examination observations, but does not translate those examination results into a functional assessment. For example, Dr. Guarnaccia reports on Plaintiff's strength, gait, and range of motion, but does not opine as to how much Plaintiff could lift or carry, or for how long Plaintiff could sit, stand, and walk in a workday. In addition, for the reasons discussed in the analysis that follows, Dr. Guarnaccia's report is largely consistent with the ALJ's RFC determination. Therefore, in light of the Court's confidence the ALJ considered Dr. Guarnaccia's report, and the report's lack of information regarding Plaintiff's functional abilities, the Court does not find that the ALJ's failure to assign the report a specific weight is reversible error in this case.

strength in the right lower extremity, 5/5 muscle strength in the left lower extremity, and full range of motion in the spine. (R. 452-53).

Further, opinions from the state agency medical consultants support the RFC determination for light work. The consultants at both the initial and reconsideration levels opined Plaintiff could occasionally lift or carry 50 pounds and frequently lift or carry 25 pounds. (R. 100, 115).

Plaintiff's testimony also supports the light work finding. At the hearing, Plaintiff stated he could lift 50 or 25 pounds comfortably. (R. 68). And, in an Activities of Daily Living Report he completed on April 22, 2012, Plaintiff wrote he could lift 30 pounds. (R. 333).

In addition, even if the ALJ had limited Plaintiff to sedentary work, the Commissioner still met his Step Five burden; the VE testified that a person with the RFC for sedentary work with the additional limitations recognized in the RFC could perform the position of addressing clerk, of which there are 12,000 jobs in the national economy. (R. 81). To meet his burden at step five, "the Commissioner need show only *one job* existing in the *national economy* that [claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (emphasis added). The addressing clerk job has 12,000 positions available nationally. This is enough to satisfy the Commissioner's burden, since courts routinely find that "a 'significant number' of jobs is 'fairly minimal.'" *See Hanson v. Comm'r of Soc. Sec.*, No. 3:15-CV-0150GTSWBC, 2016 WL 3960486, at *13 (N.D.N.Y. June 29, 2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, No. 3:15-CV-150GTSWBC, 2016 WL 3951150 (N.D.N.Y. July 20, 2016); *see also Matteo v. Berryhill*, No. 3:17-CV-1821(RMS), 2019 WL 644828, at *13 (D. Conn. Feb. 15, 2019) (10,000 jobs considered significant); *Lillis v. Colvin*, No. 3:16-CV-269(WIG), 2017 WL 784949, at *6 (D. Conn. Mar. 1, 2017) (16,770 positions found

9

significant). Therefore, limiting Plaintiff to light work as opposed to sedentary work is not a basis for remand here.

Plaintiff also contends the RFC should limit him to occasional handling, fingering, feeling, and gripping with the left hand. The Court finds the record supports the assessed RFC without additional limitations. Treatment notes following Plaintiff's back surgery reveal Plaintiff had largely normal grip strength, and only "mild diminishing of grip strength" on the left. (R. 421, 422). Further, a left shoulder x-ray from September 2013 showed only mild osteopenia. (R. 701). In addition, the state agency medical consultants at both the initial and reconsideration levels determined, upon review of the record, that Plaintiff had unlimited hand use. (R. 101, 116). Finally, Dr. Guarnaccia observed Plaintiff had full range of motion in his wrists and hands with firm and sustained grip strength on the right and weaker grip strength on the left in comparison. (R. 452). In all, the record does not compel a finding that Plaintiff required limitations to hand use.

Finally, Plaintiff avers he required an accommodation for off-task behavior because he was moderately limited in his ability to maintain attention and concentration for extended periods, and because his irritable bowel syndrome required him to take frequent restroom breaks.

The RFC limits Plaintiff to simple routine tasks. (R. 21). This sufficiently accounts for Plaintiff's difficulties with concentration, persistence, and pace, as courts routinely find that a claimant who has moderate limitations in memory and concentration can perform simple routine, tasks. *See Worthy v. Berryhill*, No. 3:15-CV-1762 (SRU), 2017 WL 1138128, at *7 (D. Conn. Mar. 27, 2017); *see also Pidgeon v. Comm'r of Soc. Sec.*, No. 15-CV-6578 CJS, 2017 WL 4680412, at *9 (W.D.N.Y. Oct. 18, 2017) (finding claimant could "engage in simple, routine tasks and/or unskilled work despite her limitations in concentration, persistence, and pace.");

*Williams v. Colvin*, 98 F. Supp. 3d 614, 633 (W.D.N.Y. 2015) (finding ALJ's conclusion claimant could engage in simple tasks consistent with medical opinions that, although claimant "had mild to moderate difficulties with regard to concentration, persistence, or pace, she was capable of performing unskilled work."); *Johnson v. Berryhill*, No. 1:17-CV-00684-MAT, 2018 WL 4539622, at *6 (W.D.N.Y. Sept. 21, 2018) (explaining that an RFC limitation to simple, routine tasks accounted for claimant's "difficulties in maintaining attention and concentration, performing complex tasks, and learning new tasks.").

As to Plaintiff's irritable bowel syndrome, the Court has reviewed the relevant records carefully. While the record does indicate Plaintiff complained of frequent bowel movements and significant gas and bloating on several occasions (R. 556, 559, 568), it also shows Plaintiff diagnosed with, and treated for, constipation (R. 550, 570, 572). And, Plaintiff had a normal colonoscopy (R. 458) and an abdominal x-ray showing no acute abnormalities (R. 571). The ALJ is tasked with weighing all of the medical evidence and resolving any conflicts in the record. *See Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Here, the ALJ could properly determine that the record did not support the need for a limitation to time off-task based on Plaintiff's irritable bowel syndrome.

In sum, the Court finds the ALJ's RFC determination is supported by substantial evidence.

### 2. The Step Five Determination

Plaintiff next challenges the ALJ's Step Five finding. At Step Five, the Commissioner must show the existence of work in the national economy that a claimant can perform. 20 C.F.R. § 404.1512(b)(3). To satisfy this burden, "[a]n ALJ may rely on a vocational expert's testimony

regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and [the hypotheticals] accurately reflect the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (internal quotation marks and citations omitted).

Plaintiff argues that he cannot perform the jobs identified by the VE because of his limited ability to read and write. The Court rejects this argument. Plaintiff's limited ability to read and write was directly addressed by the VE: the ALJ asked whether the positions of marker, assembler, and linen grader could be performed if the individual was "very limited" in his ability to read and write. (R. 81). The VE responded that this literacy limitation would not affect the ability to perform the jobs identified. (*Id.*). The VE also testified that her testimony was based on her professional experience, and consistent with the Dictionary of Occupational Titles and its companion publications. (R. 87). There is no compelling reason to second-guess the VE's testimony in this regard.

Plaintiff also argues that the ALJ's Step Five Finding is erroneous because the ALJ's hypothetical to the VE – which mirrored the RFC determination – was not based on an accurate portray of Plaintiff's impairments. Essentially, Plaintiff repeats his arguments that the RFC should have limited him to sedentary work with additional limitations for hand use and time off-task. An ALJ may rely on a VE's testimony based on a hypothetical question when the facts of the hypothetical accurately reflect the limitations and capabilities of the claimant and are based on substantial evidence. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). As set forth above, the ALJ's RFC determination is supported by substantial evidence. Thus, Plaintiff's argument regarding the sufficiently of the hypothetical must fail.

## **Conclusion**

In all, when the Court applies, as it must, the substantial evidence standard, it is required to affirm the decision of the Commissioner in this case. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46,49 (2d Cir. 2010) (internal quotations marks omitted). This means that when the medical evidence "is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

Therefore, after a thorough review of the record and consideration of all arguments Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that her opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this 11th day of September, 2019, at Bridgeport, Connecticut.

      */s/ William I. Garfinkel*
      WILLIAM I. GARFINKEL
      United States Magistrate Judge